IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____
No. 16-2993
_____


UNITED STATES OF AMERICA,
Appellee,

v.


CLIFTON MCLEAN,
Appellant

_____

**BRIEF FOR APPELLANT**
_____

Appeal from Judgment in a Criminal Case Entered on
June 13, 2016, in the United States District Court for the
Eastern District of Pennsylvania, at Criminal Number 13-cr-487-01
by the Honorable Gerald A. McHugh

Susan M. Lin
PA ID No. 94184
KAIRYS, RUDOVSKY,
     MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
(215) 925-4400

*Attorney for Appellant Clifton McLean*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................vi

Statement of Subject Matter and Appellate Jurisdiction ...........................1

Statement of Related Cases and Proceedings ...........................................2

Statement of Issues and Preservation of Issues ........................................3

Statement of the Case.................................................................................5

      A.  Procedural history.................................................................5

      B.  Background of ATF reverse stash house sting operations.........8

      C.  The targeting, investigation, and arrest of Mr. McLean..........10

      D.  Testimony of Leroy Winston...............................................15

      E.  District court's denial of an entrapment instruction ...............16

      F.  Post-trial motions...............................................................17

Summary of Argument .............................................................................18

Argument..................................................................................................21

**I.  The District Court erred in refusing to give an entrapment instruction when the record contained evidence of lack of predisposition and inducement.** ................................................21

Standard of Review..................................................................................21
Discussion................................................................................................21

      A.  Mr. McLean's lack of predisposition to commit drug stash house robberies. ...............................................................22

B.  Evidence of government inducement. ...........................................25

**II.  Mr. McLean's Hobbs Act convictions in a reverse stash house sting operation cannot be sustained when there was insufficient evidence that his conduct affected interstate commerce or would have affected interstate commerce absent governmental intervention.** ..............................................................................................28

Standard of Review.....................................................................................28
Discussion ..................................................................................................28

A.  The jurisdictional element of affecting interstate commerce cannot be met in an entirely fictitious stash house sting case.............29

B.  The Hobbs Act requires proof of some conceivable harm to interstate commerce in the absence of federal intervention................31

C.  The government failed to prove that Mr. McLean would have engaged in a Hobbs Act robbery in the absence of federal intervention. ......................................................................................35

**III.  Mr. McLean's 924(c) convictions cannot be sustained when two of the four possible predicate offenses for the conviction, specifically Hobbs Act robbery and Conspiracy, fail to qualify as a crime of violence or a drug trafficking offense.** ....................................37

Standard of Review.....................................................................................37
Discussion ..................................................................................................37

A.  Mr. McLean's Hobbs Act convictions cannot be considered crimes of violence under § 924(c)(3)(B)'s residual clause because the residual clause is void for vagueness...............................37

B.  The substantive offense of Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A) because it can be violated without the use, attempted use, or threatened use of violent physical force. .............................................................38

C.  Conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A) because it can be violated without the use, attempted use, or threatened use of violent physical force. ........................................................40

D.  Mr. McLean's § 924(c) conviction must be vacated because at least one or more of the possible grounds for conviction is legally invalid. ...................................................................43

**IV.  Mr. McLean's 922(g)(1) conviction cannot be sustained when there was no evidence that his intrastate possession of a firearm had a substantial effect on interstate commerce.** ....................................44

Standard of Review.......................................................................44
Discussion ...................................................................................44

Conclusion ..........................................................................................46

Certificate of Bar Membership

Certificate of Compliance with Fed.R.App.P. 32(a)

Certificate of Service

Certificate of Identical Compliance of Briefs

Certificate of Virus Check

**JOINT APPENDIX**

*Volume 1 (appended to the brief)*

Notice of Appeal ......................................................................................1

Judgment in a Criminal Case ....................................................................2

*Volume 2*

District Court Docket Entries......................................................................8

Indictment .................................................................................................23

District Court Memorandum Opinion of January 12, 2015.....................35

Transcript of Trial (May 5, 2015)............................................................63

Transcript of Trial (May 6, 2015)..........................................................225

Transcript of Trial (May 7, 2015)..........................................................454

*Volume 3*

Transcript of Trial (May 8, 2015)..........................................................652

Government Trial Exhibits 35A through 51A .........................................758

Government Trial Exhibits 53 through 57...............................................865

Defense Trial Exhibit 1[1] .......................................................................870

Defendant McLean's Omnibus Post-Verdict Motion[2] .........................877

Defendant's Motion for New Trial on Count Five ................................896

---

[1]    Defense Trial Exhibit 1 has been included in the appendix in the same form in which it was given to current counsel by trial counsel.  Counsel understands that the markings were included on the exhibit when presented at trial.  Undersigned counsel has made one alteration to the exhibit: the real name of the confidential informant has been redacted and replaced with "CI".

[2]    The government filed a response to the defense omnibus post-verdict motion.  Upon government motion, its response was sealed by the district court.  Because L.A.R. 30.3(a) requires district courts briefs only to the extent necessary to demonstrate that an issue was raised or an argument was made in district court, the sealed response has not been included in the appendix.

Government's Response to Motion for New Trial on Count Five ........................919

Transcript of Sentencing Hearing (June 1, 2016) ...................................................921

Transcript of Sentencing Hearing (June 2, 2016) ...................................................982

Order on Post-Trial Motions .................................................................................1061

# <u>TABLE OF AUTHORITES</u>

**Cases**

*Alderman v. United States*, 131 S. Ct. 700 (2011)...................................................45

*Baptiste v. Att'y Gen.*, —F.3d—, No. 14-4476, 2016 WL 6595943
   (3d Cir. Nov. 8, 2016) ...........................................................................38

*Bond v. United States*, 134 S. Ct. 2077 (2014) .......................................................34

*Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003)..............................................39

*Jacobson v. United States*, 503 U.S. 540 (1992) ......................................................22

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ...................................................37

*Johnson v. United States*, 559 U.S. 133 (2010) .......................................................38

*Jones v. United States*, 529 U.S. 848 (2000) .................................................... 30, 45

*National Federation of Independent Business (NFIB) v. Sebelius*,
   132 S. Ct. 2566 (2012)................................................................... 30, 32

*Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511 (2007) ..........................34

*Sherman v. United States*, 356 U.S. 369 (1958) ............................................... 23, 24

*United States v. Anthony Robinson*, U.S.C.A. No. 15-1402
   (3d Cir. Dec. 19, 2016) .......................................................................39

*United States v. Cardena*, No. 12-3680, 2016 WL 6819696
   (7th Cir. Nov. 18, 2016)......................................................................38

*United States v. Clausen*, 328 F.3d 708 (3d Cir. 2003).........................................29

*United States v. Dennis*, 826 F.3d 683 (3d Cir. 2016).................................... passim

*United States v. Fedroff*, 874 F.2d 178 (3d Cir. 1989) .............................. 22, 24, 25

*United States v. Gore*, 636 F.3d 728 (5th Cir. 2011).................................................42

*United States v. Jannotti*, 673 F.3d 578 (3d Cir. 1982)..........................................29

*United States v. King*, 979 F.3d 801 (10th Cir. 1992) ...........................................42

*United States v. Lopez*, 514 U.S. 549 (1995)............................................. 30, 32, 45

*United States v. Manzo*, 636 F.3d 65 (3d Cir. 2011) ...............................................30

*United States v. Mayfield*, 771 F.3d 417 (7th Cir. 2014)........................... 22, 23, 25

*United States v. McGuire*, 178 F.3d 203 (1999)............................................... 28, 44

*United States v. Miller*, 527 F.3d 54 (3d Cir. 2008) ...................................................4

*United States v. Morrison*, 529 U.S. 598 (2000) ....................................... 30, 32, 45

*United States v. Russell*, 411 U.S. 423 (1973).........................................................23

*United States v. Singletary*, 268 F.3d 196 (3rd Cir. 2001) .............................. passim

*United States v. Syme*, 276 F.3d 131 (3d Cir. 2002)................................................43

*United States v. Teamsters Local 560*, 780 F.2d 267 (3d Cir. 1986) .....................39

*United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013)................................................43

*United States v. Urban*, 404 F.3d 754 (3d Cir. 2005)..............................................28

*United States v. Walker*, 657 F.3d 160 (3d Cir. 2011)..............................................31

*United States v. Watkins*, 339 F.3d 167 (3d Cir. 2003) ..........................................42

*United States v. White*, 571 F.3d 365 (4th Cir. 2009)..............................................42

*United States v. Whitfield*, 649 Fed.Appx. 192 (3d Cir. 2016)................................29

**Statutes**

18 U.S.C. § 16 ................................................................................38

18 U.S.C. § 1951 ...................................................................... passim

18 U.S.C. § 3231 ...............................................................................1

18 U.S.C. § 922 ........................................................................ passim

18 U.S.C. § 924 ........................................................................ passim

21 U.S.C. § 846 ...........................................................................2, 6

21 U.S.C. § 851 ................................................................................6

28 U.S.C. § 1291 ..............................................................................1

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This case commenced with the prosecution of appellant, Clifton McLean, for alleged violations of the laws of the United States. District courts have original jurisdiction over such prosecutions pursuant to 18 U.S.C. § 3231. Upon conviction after jury trial, Mr. McLean was sentenced to a total term of imprisonment of 19 years to be followed by a total of ten years' supervised release, and a special assessment of $600. App. 2-7.[1]

This is an appeal of the district court's judgment imposed on June 2, 2016, and entered on June 13, 2016. App. 2-7. This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from a final decision of a district court. This appeal raises only issues related to the conviction and finding of guilt and does not raise any issues related to the sentence. A notice of appeal was timely filed on June 27, 2016. App. 1.

---

[1]    "App." followed by a number denotes the relevant page of the appendix to the brief. Volume 1 of the appendix is bound with this brief pursuant to Local Appellate Rule 32.2(c) (Aug. 1, 2011). Subsequent volumes are bound separately. Because this appeal does not challenge the sentence imposed, but only challenges the conviction, the Presentence Investigation Report ("PSR") and Statement of Reasons are not being filed.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. This statement identifies related cases of which counsel is aware.

Co-defendant Leroy Winston, U.S.D.C. No. 2:13-cr-487-02, pleaded guilty to one count of Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a); one count of attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846; one count of attempted possession with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846; one count of carrying a firearm during and in relation to a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c); and one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Winston received a sentence of imprisonment of 60 months and one day followed by three years of supervised release. He did not appeal this sentence.

The government filed a notice of cross-appeal in this case on July 26, 2016, which was docketed in this Court at U.S.C.A. No. 16-3227. DE# 174. The government moved to withdraw its appeal on September 14, 2016 and this Court dismissed the appeal on September 15, 2016. DE# 181.

Counsel is aware of no other case or proceeding that is related to this appeal.

## <u>STATEMENT OF ISSUES</u>

I.      **Did the District Court err in refusing to give an entrapment instruction when the record contained evidence of lack of predisposition and inducement?**

<u>Preservation of Issue:</u>

This issue was preserved by Mr. McLean's request for an entrapment instruction which was denied by the district court at trial.  App. 571-76.


II.      **May Mr. McLean's Hobbs Act convictions in a reverse stash house sting operation be sustained when there was insufficient evidence that his conduct affected interstate commerce or would have affected interstate commerce absent any governmental intervention?**

<u>Preservation of Issue</u>

This issue was preserved by Mr. McLean's motion for a judgment of acquittal made during trial and in his post-verdict motion.  App. 501, 578, 880-87.

**III.    May Mr. McLean's 924(c) conviction be sustained when two of the four possible predicate offenses for that conviction, specifically Hobbs Act Robbery and Conspiracy, fail to qualify as a crime of violence or a drug trafficking offense?**

Preservation of Issue

This issue was preserved by the Defendant's Motion for New Trial on Count Five.  App. 919.

**IV.    May Mr. McLean's 922(g) conviction be sustained when there was no evidence that his intrastate possession of a firearm had a substantial effect on interstate commerce?**

Preservation of Issue

This issue was preserved by Defendant McLean's Omnibus Post-Verdict Motion, which included a motion for judgment of acquittal under Rule 29(c) on the 922(g) conviction.  App. 881; *United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008) (holding that a motion for acquittal under Rule 29(c) will preserve a sufficiency-of-the evidence claim for review, irrespective of whether the defendant raised the claim at trial).

4

## **STATEMENT OF THE CASE**

This case involves a fictitious stash house sting – a ruse that was developed by ATF in which a confidential informant and an undercover agent proposed a robbery of a non-existent drug stash house to Mr. McLean, who had no prior convictions for robberies or gun possession.  The government in this case determined the type of drugs, the quantity of drugs, and described a situation in which it appeared guns and multiple participants would be necessary for the robbery.  Mr. McLean and his co-defendant agreed to participate in this fictitious robbery and were arrested when they appeared at a pre-determined meeting location.  Mr. McLean never engaged in an actual robbery nor any violent behavior.  There was never a stash house, no drugs to steal, and no drug dealers to threaten nor rob.

This appeal addresses the district court's refusal to give an entrapment instruction and the sufficiency of the evidence to support certain convictions.  This appeal does not raise any sentencing issues for the Court's consideration.

### A.    Procedural History

On August 14, 2013, Mr. McLean was arrested and charged in a complaint and warrant filed in the Eastern District of Pennsylvania.  DE# 1.  On September 12, 2013, Mr. McLean was charged in an indictment with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); attempt to

commit Hobbs Act robbery and aiding and abetting, in violation of 18 U.S.C. §§

1951(a) & 2 (Count Two); conspiracy to possess with intent to distribute five

kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 (Count Three);

attempt to possess with intent to distribute five kilograms or more of cocaine and

aiding and abetting, in violation of 21 U.S.C. §§ 846 & 841(a)(1), (b)(1)(A) & 2

(Count Four); carrying a firearm during and in relation to a crime of violence and a

drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Five); and being a

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e)

(Count Six).  A co-defendant, Leroy Winston, was also named in counts one

through four.  App. 23-34.

Prior to trial, Mr. McLean filed motions for discovery due to outrageous

government conduct and selective prosecution and motions to dismiss the

indictment due to outrageous government conduct and selective prosecution.  DE #

51, 63, 64 & 88.[3]  These motions were denied.  DE# 61, 62, 78, 79 & 102.  Also

prior to trial, the government filed a notice of a prior felony drug conviction

pursuant to 21 U.S.C. § 851(a).  DE# 57.

---

[3]    Entries on the district court docket are referred to as DE# followed by the
number of the docket entry.  A copy of the district court docket is contained in the
joint appendix.  App. 8-22.

A jury trial commenced on May 4, 2015.  At trial, Mr. McLean made an oral Rule 29 motion for judgment of acquittal based on insufficient evidence that the conduct affected interstate commerce, and this motion was denied.  App. 578-580. The Court also denied Mr. McLean's request for an entrapment instruction.  App. 574-576.  On May 8, 2016, the jury returned a guilty verdict on all counts against Mr. McLean.  App. 743, 754.  The jury also answered special interrogatories on counts three and four determining that over five kilograms of cocaine were involved in count three and over 500 grams of cocaine were involved in count four. App. 744.

After trial, new counsel was appointed to represent Mr. McLean.  DE# 140. Mr. McLean filed post-trial motions on March 15, 2016, and April 29, 2016, raising various arguments for new trial and/or judgment of acquittal.  At a two-day sentencing hearing held on June 1 and June 2, 2016, the district court denied all of Mr. McLean's motions for new trial and/or judgment of acquittal.  App. 924-930. Upon concession by the government, the district court found that the predicate offenses necessary for a mandatory sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), had not been proven.  App 1023, 1047.  The district court also granted a sentencing entrapment argument allowing for a sentence below the 20-year mandatory minimum sentence on Count Three.  App. 1052-55.  The court

sentenced Mr. McLean to a total of 19 years' imprisonment followed by 10 years of supervised release and a special assessment of $600.  App. 1050-51.

Mr. McLean filed a timely notice of appeal on June 27, 2016, challenging only the convictions and not the sentence.  DE# 171; App. 1.  The government filed a notice of cross-appeal on July 26, 2016.  DE# 174.  The government moved to withdraw its notice of cross-appeal on September 14, 2016 and that appeal was dismissed on September 15, 2016.  DE# 181.

B.    Background of ATF Reverse Stash House Sting Operations

As described by the district court, the prosecution of Mr. McLean arose "out of a string of highly successful but increasingly controversial undercover sting operations utilized by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)."  App. 35.  These sting operations involved the recruitment of individuals to participate in the robbery of a fictional cocaine "stash house" with a large prospective pay-off in drug profits.  *Id.*  ATF first developed these stings in the 1980's or 1990's in Miami where large quantities of cocaine were entering the United States and professional robbery crews had started committing home invasion robberies of drug stash houses.  App. 35, 102-03.  ATF used the sting operation to investigate and arrest these professional robbery crews who sometimes mistakenly targeted innocent households.  *Id.*  Since then, ATF has employed this particular law enforcement technique nationwide, even in

communities where it is unclear that drug stash house robberies are an immediate threat to public safety. App. 35, 214-15 (testimony of ATF agent acknowledging a lack of studies and statistics on number of home invasion robberies caused by attempts to rob drug dealers). Confidential informants ("CI") and undercover agents are used to target and recruit individuals for these reverse sting operation. *See, e.g.,* App. 188, 191, 208, 214.

Numerous defendants, including Mr. McLean, have claimed that ATF reverse stash house sting operations disproportionately target minority defendants. App. 37; DE# 51, 88. The district court recognized that all 24 defendants prosecuted in reverse stash house sting cases in the Eastern District of Pennsylvania within the past five years have been African-American. App. 37. The district court also recognized a national statistical investigation reporting that 90 percent of defendants prosecuted in reverse stash house sting cases were racial or ethnic minorities. App. 37. In Mr. McLean's case, the undercover ATF agent admitted that in all 13 of the stash house sting operations he had participated in nationwide, none of them targeted any white individuals. App. 214. Mr.

McLean's pretrial motions based on outrageous government conduct and/or selective prosecution were denied and are not being raised on appeal. [4]

The purported goal of ATF's reverse stash house sting operation is to arrest those who are already engaged in robbing drug stash houses. App. 437.

C.    The Targeting, Investigation, and Arrest of Mr. McLean

1.    *Initial, unrecorded, communications between the CI and Mr. McLean*

On June 18, 2013, a paid CI informed his handler, ATF Agent Patrick Edwards, that approximately one week before, Mr. McLean ran into the CI and

---

[4]    Many federal judges have criticized law enforcement's use of reverse stash house sting operations both because such operations have a racially disparate impact and because such operations have great potential to be used in a manner that violates substantive due process rights.  App. 35-36.  *See, e.g., United States v. Dennis*, 826 F.3d 683, 698-99 (3d Cir. 2016) (Ambro, J., dissenting in part and concurring in part) (agreeing the indictment should not be dismissed for outrageous government conduct but writing "to express my concern about the constitutional implications of stash house reverse stings."); *United States v. Whitfield*, 649 Fed.Appx. 192, 196 n.11 (3d Cir. 2016) (not precedential) ("We simply note our concern regarding law enforcement tactics like those in this case, and add our voice to others who have expressed doubts about the seemingly impossible burden facing those attempting to challenge these tactics as racially discriminatory."); *United States v. Black*, 733 F.3d 294, 318 (9th Cir. 2013) (Noonan, J., dissenting) ("The power exercised by the government is not only to orchestrate the crime but to control and expand those guilty of it.  I do not see how this power can be rationally exercised.  No standard exists to determine the limits of the government's discretion.").  Despite these concerns, undersigned counsel has not found a case dismissing a stash house sting operation based on outrageous government conduct or selective prosecution and therefore has elected, with the knowledge and consent of Mr. McLean, not to raise these issues on appeal.

said that he was "looking for something to get into . . . like he was looking for something to take." App. 99. This particular encounter between the CI and Mr. McLean was not recorded and not monitored by any law enforcement agent. App. 100. Agent Edwards interpreted this initial conversation to be Mr. McLean asking the CI if he knew of any drug dealers whom Mr. McLean could rob. App. 99. Agent Edwards also acknowledged that during this initial, unrecorded conversation, no one used the words rob, drugs, or gun. App. 189. Evidence regarding this initial encounter was introduced through the hearsay testimony of Agent Edwards, who was not present at that initial encounter. The CI did not testify at trial.[5]

The CI in this case had previously worked with ATF on at least five other stash house sting operations and was paid approximately $62,000 for his work with ATF. App. 188, 191, 208 (testimony regarding this CI's work on other reverse stash house sting operations); App. 97 (testimony regarding money paid to the CI).

The CI did not report his initial conversation with Mr. McLean on either the day it occurred nor on the following day. App. 194. Rather the CI waited one or two weeks before informing Agent Edwards about the conversation. App. 187, 193-94. Other than that initial conversation, the CI did not report any other

---

[5]     Trial counsel did not make a hearsay objection to the ATF agent's testimony regarding the CI's description of this initial conversation.

unrecorded contact with Mr. McLean to his handler.  App. 187.  However, phone records demonstrated that the CI had contacted Mr. McLean on at least six occasions between June 16th and June 18th.  App. 198-200, 870 (Defense Exhibit 1).  These contacts were not monitored by ATF agents and the CI did not report to ATF agents that he had reached out to Mr. McLean on these six occasions.  App. 200, 202.

After the CI described his initial, unrecorded conversation with Mr. McLean to ATF agents, ATF agents determined that Mr. McLean had four previous convictions for drug trafficking, a 2002 robbery arrest for which he was acquitted, and a 2001 attempted murder and gun possession arrest which was dismissed.  App. 41.  Mr. McLean's criminal history contained no convictions for robberies or gun possession.  *Id.*  On the basis of this criminal history, ATF agents determined that Mr. McLean must be predisposed to rob drug stash houses and targeted him for their sting operation.  App. 39-40.  Prior to the CI's report to his handler on June 2013, ATF had no knowledge of Mr. McLean's existence.

2.    *Recorded communications and meetings with Mr. McLean*

The first monitored and recorded interaction between Mr. McLean and the CI occurred on June 19, 2013.  App. 760.  The CI called Mr. McLean and asked that they meet.  App. 758.  During this meeting, the CI informed Mr. McLean that he had a potential stash house robbery job involving "bricks" and "a lot of joints" –

12

referring to a large quantity of cocaine.  App. 190, 762.  A "brick" typically refers

to a kilogram of cocaine and each kilogram of cocaine can be sold for anywhere

from $40,000 to $100,000 depending on quality and whether it is cut with another

substance.  App. 105, 426.  The CI mentioned at least three times that the job

involved multiple "bricks" and "joints."  App. 762, 764.  Mr. McLean indicated

that he was interested in the stash house robbery job and also spoke about his

previous drug selling activity.  *Id.*

During this June 19th conversation, the CI also told Mr. McLean that he

wanted to "make sure you got a team" and that he was "just making sure" that Mr.

McLean had "hammers and all that."  App. 762, 767.  Mr. McLean stated that he

had a team of two others and that he had a "mac and a pound," two types of

firearms.  App. 762, 767.  However, the only "team" that ever appeared in this case

was Mr. McLean and co-defendant Leroy Winston and text messages demonstrated

that Mr. McLean was still trying to obtain a firearm as late as the evening before

the fake robbery.  App. 869 (text messages dated 8/13/13 at 1:49pm and 6:04 pm

from McLean to another individual stating that "U got to get me a ratchet" and

"Looking for a burner"); 373 (testimony regarding the definition of "burner" and

"ratchet").

The CI called Mr. McLean again on June 21, 2013, to give him a new phone

number.  App. 41, 769.  Mr. McLean initiated contact with the CI on June 28,

2013, to ask what was going on with the possible plan.  App. 41, 771.  On July 22, 2013, Mr. McLean texted the CI asking him, "was up."  App. 41.  When the CI called him back, Mr. McLean stated he was "starving" and asked about the plan.  App. 41-2, 773.  About one week later, the CI set up a meeting between Mr. McLean and Agent Edwards who was acting undercover.  App. 42, 775.

The first meeting between Mr. McLean and Agent Edwards occurred on August 1, 2013.  App. 42, 779.  Agent Edwards posed as a drug courier from New York who regularly came to Philadelphia to pick up cocaine from a stash house.  App. 42, 779.  During this conversation, Agent Edwards described multiple people with guns guarding the stash house, thereby suggesting that Mr. McLean would need guns and multiple team members.  *Id.*  Agent Edwards told Mr. McLean that he would not know that actual location of the theoretical stash house, which was constantly changing, until shortly before the time of the robbery.  *Id.*  Agent Edwards told Mr. McLean that he expected eight to nine kilograms of cocaine to be in the house.  App. 783.

On August 8, 2013, the CI again reached out to Mr. Mclean to set up another meeting with Agent Edwards.  App. 42, 793.  After that meeting, in another phone call, the CI told Mr. McLean that Agent Edwards was having doubts about Mr. McLean and the Mr. McLean needed to demonstrate that he was ready and eager to do the job and that Mr. McLean had to have a team of people.  App. 801-02.

14

On August 9, 2013, the CI called Mr. McLean to set up another meeting with Agent Edwards. App. 42, 804. The CI insisted that Mr. McLean would have to bring his "team" for Agent Edwards to meet. App. 42, 805-06. Later that day, the CI, Agent Edwards, Mr. McLean and Leroy Winston met to discuss the robbery. App. 42, 811.

On August 13, 2013, the CI called Mr. McLean and told him that the robbery was set for the next day. App. 826. Text messages from later that day demonstrate that Mr. McLean still did not have a gun and was trying to obtain one. App. 869.

On August 14, 2013, the CI picked up Mr. McLean and Winston and drove them to the location where they would meet with Agent Edwards and get the address of the stash house. App. 43. While traveling to the location, Mr. McLean and Winston discussed the details of the robbery and their plan. *Id.* When they arrived at the meeting place, upon a signal from Agent Edwards, ATF agents arrested Mr. McLean and Winston. *Id.* Two firearms were recovered on the scene. *Id.*

### D.    Testimony of Leroy Winston

Co-defendant Leroy Winston testified pursuant to a cooperation plea agreement. App. 374. Winston testified that he had never committed any previous robberies with Mr. McLean. App. 407. However, Winston testified that he had

robbed an individual who sold marijuana at the request of Mr. McLean who did not want to that marijuana dealer working on Mr. McLean's block. App. 341-42. The amount of marijuana gained was so insignificant that Winston could not remember the amount he gained and did not remember giving any of it to Mr. McLean. App. 343-44. Mr. McLean was not present for that robbery. *Id.* Winston's trial testimony regarding this supposed prior marijuana robbery was inconsistent with the details that he previously provided to law enforcement agents. App. 402-05.

In contrast to Agent Edwards' testimony that Mr. McLean initiated contact regarding a possible robbery, Winston testified that Mr. McLean was the one approached by others about a possible robbery scenario. App. 336 (McLean "had a friend that was trying to set up a robbery"); 382 ("they approached [McLean] about it").

E.    District Court's Denial of an Entrapment Instruction

Mr. McLean's trial counsel discussed entrapment in his opening statement. App. 87. Evidence regarding Mr. McLean's prior drug trafficking activity and prior criminal activity with Winston was permitted into evidence at least in part to rebut an entrapment defense. App. 156, 246. However, at the end of the defense case, the district court found that the Mr. McLean had failed to produce any evidence of lack of predisposition or inducement and denied the defense request for an entrapment instruction. App. 574-76. In so ruling, the court explained that

16

in order for there to be inducement "there would need to be something highly extraordinary and unusual about it" and that "it would have been impossible for [the defense] to produce" evidence of lack of predisposition.  App. 575.

Despite the court's ruling, the government addressed the issues of predisposition and inducement in its closing argument, to which Mr. McLean objected.  App. 598, 604-06, 609.

The jury returned a verdict of guilty on all charges against Mr. McLean. App. 743, 754.

F.    Post-Trial Motions

After the trial, Mr. McLean filed, *inter alia*, post-trial motions for judgment of acquittal on the Hobbs Act counts, on the 924(c) count, and on the 922(g) count. App. 877, 896.  The district court denied these motions for reasons stated on the record at the sentencing hearing.  App. 924-30.

17

## **SUMMARY OF ARGUMENT**

### Issue I

The district court erred in denying an entrapment instruction when there was evidence supporting Mr. McLean's lack of predisposition to commit robberies of drug stash houses and evidence of government inducement.  The court's denial may have been based on an erroneous understanding that Mr. McLean's drug trafficking history precluded him from showing a lack of predisposition.  However, Mr. McLean did not have to demonstrate a lack of predisposition to commit *any* crime, only *the* crime of drug stash house robberies.  The district court also erroneously stated that a defendant had to produce evidence of something "highly extraordinary and unusual" in order to show inducement.  However, to show inducement, a defendant need only show that the government's behavior went beyond mere solicitation or a mere request to participate in criminal activity.  Because there was evidence of both lack of predisposition and government inducement, the court erred in denying Mr. McLean's request for an entrapment instruction and Mr. McLean's Hobbs Act convictions, Counts One and Two, should be vacated.

### Issue II

Mr. McLean's Hobbs Act convictions, Counts One and Two, must be vacated because there was no evidence that his conduct substantially affected

interstate commerce or would have affected interstate commerce in the absence of any governmental intervention.  In cases involving entirely fictitious stash house stings, where no drugs, no stash house, no economic activity, no drug dealers, and no victims exist, there is no possibility at all, neither remote, potential, nor *de minimis*, of any effect on interstate commerce.  As affecting interstate commerce is a jurisdictional element of Hobbs Act offenses, the convictions must be vacated.

Alternatively, in fictitious sting cases, the government must prove that the defendant would have engaged in conduct affecting interstate commerce even in the absence of intervention by the federal government.  Because the government failed to do so in Mr. McLean's case, the Hobbs Act convictions must be vacated.

<u>Issue III</u>

Mr. McLean was convicted in Count Five of using and carrying a firearm in furtherance of a crime of violence or a drug trafficking crime in violation of § 924(c).  Because Hobbs Act robbery (Count Two) and conspiracy to commit Hobbs Act robbery (Count One) categorically fail to qualify as "crimes of violence" under § 924(c)(3)'s "force" clause, and because § 924(c)(3)'s residual clause is unconstitutionally vague, Mr. McLean's convictions on Counts One and Two cannot be used to support his conviction on Count Five.  The jury was specifically instructed that it could convict Mr. McLean on Count Five on the basis of the Hobbs Act offenses **or** the drug trafficking counts (Counts Three and Four).

19

App. 708.  Where one of two or more alternative theories supporting a count of

conviction is legally invalid, the conviction must be vacated and remanded for a

new trial.  Because two out of the four theories supporting Mr. McLean's 924(c)

conviction are legally invalid, that conviction should be vacated and a new trial

ordered.

<u>Issue IV</u>

Mr. McLean's conviction for being a felon in possession of a firearm under

§ 922(g)(1) must be vacated because the evidence failed to establish that his simple

intrastate possession of a firearm substantially affected interstate commerce.  The

conviction must also be vacated because Congress lacks the power to regulate

under the Commerce Clause the simple intrastate possession of a firearm.  It is

counsel's understanding that this Circuit's binding precedent forecloses relief on

this claim at this time.  *See United States v. Singletary*, 268 F.3d 196, 205 (3rd Cir.

2001).  Mr. McLean raises it here to preserve the matter for future review, in the

event the governing law changes.

# **ARGUMENT**

# **I.**

### **The District Courted erred in refusing to give an entrapment instruction when the record contained evidence of lack of predisposition and inducement.**

Standard of Review

A district court's denial of a request for an entrapment instructions is a matter of law subject to plenary review. *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016). The Court also "resolve[s] all factual conflicts in favor of [the defendant] no matter how improbable [it] may find the defense version of the facts." *Id.* at 686 n. 2 (internal quotations omitted).

Discussion

The district court erred in denying an entrapment instruction where there was evidence of Mr. McLean's lack of predisposition to commit armed robberies of drug stash houses and where there was evidence of government inducement. Entrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of government inducement. *Dennis*, 826 F.3d at 690. In order to obtain a jury instruction on the defense of entrapment, a defendant has the burden of production with regards to the two elements of entrapment: 1) the defendant's lack of predisposition to commit the crime and 2) inducement by the government to commit the crime. *Id.* Once the defense has produced enough

evidence to warrant an entrapment instruction, the government has the burden of disproving entrapment beyond a reasonable doubt. *Jacobson v. United States*, 503 U.S. 540, 548-59 (1992). In deciding whether the defendant has produced sufficient evidence for an entrapment instruction, the district court should not weigh contradictory evidence nor draw any inferences against the defendant. *Dennis*, 826 F.3d at 392-93.

A.      Mr. McLean's Lack of Predisposition to Commit Drug Stash House Robberies

Predisposition may be defined as a defendant's inclination to engage in the crime for which he was charged "measured *before* his initial exposure to government agents." *United States v. Fedroff*, 874 F.2d 178, 182 (3d Cir. 1989) (emphasis added). Thus, a defendant's active participation after the government's efforts to recruit him has limited bearing on his predisposition. *United States v. Mayfield*, 771 F.3d 417, 442 (7th Cir. 2014). In considering predisposition or lack thereof, one factor that can be considered is "evidence showing that the suggestion of illegal activity was made by government agents." *Fedroff*, 874 F.2d at 184. A defendant's criminal history is also relevant to predisposition, but a court must distinguish between previous convictions for the crime at hand rather than any crime at all. *Mayfield*, 771 F.3d at 438 ("'[T]he principal element in the defense of entrapment [i]s the defendant's predisposition to commit *the* crime'—not just *any*

22

crime." (emphasis in original) (quoting *United States v. Russell*, 411 U.S. 423, 433 (1973)). Thus, this Circuit has found that a defendant with a history of drug possession and distribution could rely on his criminal history to show a lack of predisposition for committing robbery and possessing a gun, but not a lack of predisposition for drug trafficking crimes. *See Dennis,* 826 F.3d at 693; *see also Mayfield*, 771 F.3d at 442 (finding that Mayfield's prior conviction for armed carjacking was not conclusive evidence that he was predisposed to commit an armed robbery of a drug stash house). A court must also consider the age of the prior criminal history. *See Sherman v. United States*, 356 U.S. 369, 373-77 (1958) (holding that five and nine year old convictions for selling and possessing drugs were insufficient to establish that defendant was predisposed to drug trafficking at the time the government agent approached the defendant).

In denying Mr. McLean's request for an entrapment instruction, the district court stated that there was "compelling" evidence of predisposition and it "would have been impossible" for the defense to produce evidence of non-predisposition. App. 576. However, the evidence of Mr. McLean's predisposition was at the very least mixed, thereby requiring that the jury be permitted to consider the defense of entrapment.

Admittedly, Mr. McLean had a history of drug trafficking activity. But, Mr. McLean did not have to demonstrate a lack of predisposition to commit *any* crime,

23

only *the* crime of armed drug stash house robberies.  Although Mr. McLean had

prior drug trafficking convictions, he had no prior convictions for robbery or gun

possession.  App. 41.  Mr. McLean's prior arrests, which did not result convictions,

for robbery and gun possession were over a decade old and could not serve to

establish predisposition as a matter of law.  *See Sherman*, 356 U.S. at 373-77.  Mr.

McLean's criminal history therefore served as evidence of lack of predisposition.

The testimony of co-defendant Leroy Winston offered evidence of both

predisposition and lack thereof.  Winston testified that Mr. McLean had previously

asked him to rob a marijuana dealer who was selling on Mr. McLean's block.

App. 341-44.  However, Winston also testified that he had never committed any

robberies with Mr. McLean.  App. 407.  And Winston testified Mr. McLean was

approached by others with a robbery proposal (App. 336, 382) – evidence that

government agents, or the CI, were the first to suggest illegal activity.  *See Fedroff*,

874 F.2d at 184.

Finally, text messages indicated that on the evening before the fictitious

robbery, Mr. McLean still did not possess a firearm and was trying to obtain one

from another individual.  App. 869.  These text messages served as evidence of

lack of predisposition.

When evidence of predisposition or lack of predisposition "cuts both ways,"

the district court should not invade the province of the jury and should allow the

jury to consider the defense of entrapment. *See Dennis*, 826 F.3d at 693. Mr.

McLean's criminal history, the text messages demonstrating lack of a gun, and

portions of Winston's testimony provided sufficient evidence of lack of

predisposition to committed armed robberies of drug stash houses that Mr. McLean

met his burden of production on this element of entrapment.

B.    Evidence of Government Inducement

To show inducement by the government, a defendant must show more than

"mere solicitation" or request by the government to participate in a crime. *Dennis*,

826 F.3d at 690. However, inducement does not require "extraordinary" conduct

nor "oppressive" inducement on the part of the government. *Fedroff*, 874 F.2d at

185. The district court was mistaken in stating that Mr. McLean had to produce

evidence of something "highly extraordinary and unusual" in order to show

inducement. Rather, in order to produce enough evidence to warrant a jury

instruction, Mr. McLean simply had to demonstrate something more than mere

solicitation on the part of the government. Inducement means "government

solicitation of the crime plus some other government conduct that creates a risk

that a person who would not commit the crime if left to his own devices will do so

in response to the government's efforts." *Mayfield*, 771 F.3d at 434-35. Such

"other conduct" may be persuasion, fraudulent representation, threats, coercive

tactics, harassment, promises of reward or pleas based on need, sympathy or friendship. *Dennis*, 826 F.3d at 690.

It is undisputed in reverse sting cases that a governmental agent first proposes the crime. Additionally, Winston testified that Mr. McLean's friend first approached Mr. McLean about the robbery. Thus, the evidence certainly established that the government solicited the crime in this case.

There was also evidence of more than a simple solicitation on the part of the CI or the ATF agent. The Court may consider that ATF had no knowledge of Mr. McLean prior to the CI targeting Mr. McLean and bringing him to the attention of ATF. *See Dennis*, 826 F.3d at 691 (in reversing district court's denial of an entrapment instruction, noting that the defendant had no known connections to the crimes ATF was targeting prior to the CI producing the defendant's name). The Court should also consider phone records indicating that the CI initiated contact with Mr. McLean multiple times in the two to three days preceding law-enforcement-monitored communications. App. 198-200, 870. These calls, initiated by the CI, support an inference of harassment and persuasion by the CI.

In the first recorded conversation, the CI promised great rewards by proposing a job with "bricks" and "lots of joints" of cocaine. App. 190, 762. There was testimony at trial that even one "brick" or a kilogram of cocaine could be sold, after cutting and repackaging the drug, for $100,000. App. 426. Thus,

from the very first recorded conversation, there was the promise of a great reward. This promise only increased after Agent Edwards told Mr. McLean there would be eight or nine kilograms of cocaine in the fictitious stash house. App. 783. Also, in this conversation, the CI did not merely propose a robbery, but suggested to Mr. McLean that he required a "team" of individuals and the CI is the first to raise the need for "hammers" – meaning firearms. App. 190, 762, 767. In later conversations, both the CI and Agent Edwards demanded that Mr. McLean demonstrate that he was ready to do the job and insisted that Mr. McLean bring a "professional" team. App. 801-02, 812.

The above-described government initiated interactions between the CI or the undercover agent and Mr. McLean constituted more than mere solicitation. Rather, these interactions could be interpreted by a jury as harassment, persuasion and promises of reward. Therefore, Mr. McLean met his burden of production as to the element of inducement.

Because there was evidence of both lack of predisposition to commit armed stash house robberies and government inducement, Mr. McLean was entitled to an entrapment instruction. The district court's failure to give the requested instruction requires that the Hobbs Act and gun possession convictions be vacated and the case remanded for a new trial.

## II.

**Mr. McLean's Hobbs Act convictions in a reverse stash house sting operation cannot be sustained when there was insufficient evidence that his conduct affected interstate commerce or would have affected interstate commerce absent any governmental intervention.**

<u>Standard of Review</u>

On challenges to the sufficiency of the evidence, the Court "view[s] the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McGuire*, 178 F.3d 203, 206 n.2 (1999) (internal quotation marks and citation omitted). The construction of a statute in accordance with the Constitution is a purely legal issue subject to plenary review. *United States v. Singletary*, 268 F.3d 196, 198-99 (3d Cir. 2001); *see also United States v. Urban*, 404 F.3d 754, 762 (3d Cir. 2005).

<u>Discussion</u>

Mr. McLean's Hobbs Act convictions must be vacated because there was insufficient evidence that his conduct substantially affected interstate commerce or would have affected interstate commerce in the absence of any governmental intervention.

A.    <u>The jurisdictional element of affecting interstate commerce cannot be</u>
<u>met in an entirely fictitious stash house sting case.</u>

Section 1951(a) provides, "Whoever in any way or degree obstructs, delays,
or affects commerce or the movement of any article or commodity in commerce by
robbery . . ." shall be punished according to the law.  18 U.S.C. § 1951(a).  The
effect-on-commerce requirement is a "jurisdictional element" the absence of which
prevents prosecution under the Hobbs Act.  *United States v. Clausen*, 328 F.3d
708, 710 (3d Cir. 2003).  This jurisdictional element of interstate commerce is not
satisfied in cases involving entirely fictitious stash house stings.  In such cases,
there is no possibility at all, neither remote, potential, nor *de minimis*, of any effect
on interstate commerce.

Mr. McLean recognizes that a recent panel of the Court rejected this
argument in a non-precedential opinion.  *See United States v. Whitfield*, 649
Fed.Appx. 192, 195-196 (3d Cir. 2016) (not precedential).  The *Whitfield* panel
relied on this Court's precedential decision in *United States v. Jannotti*, 673 F.3d
578 (3d Cir. 1982).  The *Jannotti* Court held that the jurisdictional interstate
commerce element of a Hobbs Act Extortion charge was satisfied in the case of the
ficticious ABSCAM sting operation run by the FBI from approximately 1978 to
1980.

29

However, the continued validity of *Jannotti* is called into doubt by later Supreme Court cases clarifying the limits on the federal government's Commerce Clause jurisdiction. *See United States v. Lopez*, 514 U.S. 549 (1995) (statute prohibiting gun possession in school zones fell outside the federal government's Commerce Clause power); *United States v. Morrison*, 529 U.S. 598 (2000) (Commerce Clause did not provide the federal government with power to regulate gender-motivated crimes of violence); *Jones v. United States*, 529 U.S. 848 (2000) (federal arson statute cannot extend to non-commercial private residence under the Commerce Clause even if the residence used utilities, was mortgaged, or was insured interstate); *National Federation of Independent Business (NFIB) v. Sebelius*, 132 S. Ct. 2566 (2012) (federal government cannot create commercial activity in order to regulate it and thus the individual mandate under the Affordable Care Act was not a valid exercise of the government's Commerce Clause power).

The reasoning behind *Jannotti* was also called into doubt by the Third Circuit's decision in *United States v. Manzo*, 636 F.3d 65 (3d Cir. 2011). Manzo was running for mayoral office and accepted payments in exchange for future favors when he entered office. He lost the election. Thus, it was impossible for him to ever complete the crime. The Third Circuit rejected the government's argument that the conspiratorial agreement and the overt act of accepting payments was a complete crime and was enough to sustain a conviction for Hobbs Act

Extortion.  Although the Third Circuit facially did not disturb the ruling of

*Jannotti*, the *Manzo* court left open the question of whether legal impossibility

could be a defense to certain Hobbs Act conspiracies.  *Id.* at 67 n.10.

In light of the *Manzo* Court's recognition that impossibility can be a defense

to conspiracy and attempt to commit Hobbs Act offenses and in light of the

Supreme Court's cases cabining the reach of the federal government under the

Commerce Clause, Mr. McLean wishes to preserve this issue for future review.

     B.    <u>The Hobbs Act requires proof of some conceivable harm to interstate commerce in the absence of federal intervention.</u>

Mr. McLean's Hobbs Act convictions must be vacated because the

jurisdictional element of affecting interstate commerce in a fictitious stash house

sting case requires proof that Mr. McLean's conduct would have affected interstate

commerce *even in the absence of federal intervention*.

The Hobbs Act's "required effect on interstate commerce is identical with

the requirements of federal jurisdiction under the Commerce Clause." *United

States v. Walker*, 657 F.3d 160, 179 (3d Cir. 2011) (citation omitted).  If conduct is

beyond the power of Congress to regulate under the Commerce Clause, it is

necessarily beyond the reach of the Hobbs Act.  In order to sustain a conviction

under the Hobbs Act, there must be an actual link to interstate commerce, not just a

speculative possibility.  The government cannot "pile inference upon inference" to

arrive at some hypothetical connection to interstate commerce. *Lopez*, 514 U.S. at 567; *see also id.* at 583 (Kennedy, J., concurring) (requiring a "strong[] connection or identification with commercial concerns"). Otherwise, Congress could "regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." *Id.* at 564; *see Morrison*, 529 U.S. at 617 ("We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.").

The federal government cannot create commerce-affecting activity in order to regulate it. In *National Federation of Independent Business (NFIB) v. Sebelius*, 132 S.Ct. 2566 (2012), the Supreme Court explained that Congress does not have "the power to bring the subject of the regulation into existence." *Id.* at 2586. Instead, "the power to regulate assumes there is already something to be regulated." *Id.* In *NFIB*, the Court held that the Commerce Clause did not permit the creation of commerce through the Affordable Care Act's individual mandate, which required that individuals buy health insurance or pay a penalty. "The individual mandate," the Court explained, "does not regulate existing commercial activity." *Id.* at 2587. Instead, it induced individuals "to become active in commerce by purchasing a product." *Id.* at 2587 (emphasis in original). The government defended the mandate based on the prediction that most individuals

32

would eventually enter the healthcare market anyway; the Court rejected this attempt to regulate based solely on "prophesied future activity." *Id.* at 2590; *see id.* (noting that "we have never permitted Congress to anticipate that activity itself in order to regulate individuals not currently engaged in commerce," and instead requiring some showing of "preexisting economic activity"). The holding was categorical: Congress can only regulate activity that is already occurring absent federal intervention; it cannot create that activity in the first place.

Likewise, the federal government lacks power to create conspiracies that would have never occurred in the absence of federal intervention. When a person is not engaged in commerce-impairing conduct, and never will be, the government's creation and punishment of that conduct does not protect interstate commerce in any conceivable way. There is no federal interest in punishing a person who would never, on their own, have committed the feared conduct. Therefore, to justify the imposition of federal criminal law, the government must prove to the fact-finder that the defendant was otherwise engaged in the type of conduct at issue. Without that showing, the government has not proven the interstate nexus element of the Hobbs Act, because it has not shown that the Commerce Clause reaches the proscribed conduct.

At trial, the government implicitly acknowledged that a proper prosecution through a reverse stash house sting operation requires proof that an individual was

otherwise engaged in Hobbs Act robberies – actual behavior affecting interstate commerce instead of just fictitious behavior.  App. 135 ("the purpose of this technique is to target specifically people who are engaged in this type of activity"), 437, 585  However, the government was never required to prove that Mr. McLean was a habitual, or even a potential, stash house robber.  That omission contravened the requirement that the government prove every element of the offense in every case.  *See, e.g., Bond v. United States*, 134 S. Ct. 2077, 2089 (2014) (describing the need, when applying federal criminal statutes, to "require proof of a connection to interstate commerce in every case, thereby 'preserv[ing] as an element of all the offenses a requirement suited to federal criminal jurisdiction alone.'") (internal citations omitted).

This Court must interpret the Hobbs Act to fit within the bounds of the Commerce Clause.  It would raise grave constitutional doubts to relieve the government of its obligation to prove some conceivable connection to interstate commerce.  This Court must therefore read that element to require proof that the commerce-affecting crime would reasonably have happened in the absence of government intervention.  *See Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511, 514 (2007) (describing "our established practice of interpreting statutes to avoid constitutional difficulties").

34

C.    The government failed to prove that Mr. McLean would have engaged
in a Hobbs Act robbery in the absence of federal intervention.

Even though the government at trial insisted that the purpose of reverse stash house stings was to target individuals who were already engaged in robbing drug stash houses, they failed to provide sufficient evidence to prove beyond a reasonable doubt that Mr. McLean was one such individual.  Thus, they failed to prove that Mr. McLean would have engaged in a Hobbs Act violation absent the action and intervention of the CI and Agent Edwards.

Mr. McLean was not part of a professional crew of drug stash house robbers that the ATF was attempting to infiltrate.  Indeed, ATF had no knowledge of Mr. McLean's existence until the paid CI brought Mr. McLean to the attention of ATF. There was evidence that the CI first approached Mr. McLean about a possible robbery.  App. 336. 382.  Mr. McLean's criminal history failed to establish that he would have engaged in a Hobbs Act robbery without ATF's actions, as he had no prior convictions for gun possession or for robbery, his 2002 arrest for robbery resulted in an acquittal, and his 2001 arrest for attempted murder and gun possession was dismissed within four months.  App. 41.  Leroy Winston, who admitted to previously robbing drug dealers, testified that he had never committed an armed robbery with Mr. McLean.  App. 407.  While Winston also testified he robbed a marijuana dealer in 2008 or 2009 at the request of Mr. McLean, this

35

uncorroborated and contradictory testimony by a cooperating co-defendant was insufficient to meet the government's burden on this element.  Finally, text messages from the day before his arrest showed that Mr. McLean did not possess a gun at the time ATF targeted him and only obtained a gun for the purpose of going through with ATF's fictitious robbery.  App. 869.

Because the government failed to provide sufficient evidence that Mr. McLean would have engaged in a Hobbs Act violation in the absence of governmental intervention, it failed to prove the jurisdictional requirement of affecting interstate commerce.  Mr. McLean's Hobbs Act convictions should therefore be vacated.

## III.

**Mr. McLean's 924(c) conviction cannot be sustained when two of the four possible predicate offenses for the conviction, specifically Hobbs Act Robbery and Conspiracy, fail to qualify as a crime of violence or a drug trafficking offense.**

<u>Standard of Review</u>

This Court exercises plenary review over challenges to the district court's construction of statutes and case law. *Singletary*, 268 F.3d at 199.

<u>Discussion</u>

Mr. McLean was convicted in Count Five of using and carrying a firearm in furtherance of a crime of violence or of drug trafficking crime in violation of § 924(c). Because Hobbs Act robbery and conspiracy to commit Hobbs Act robbery categorically fail to qualify as "crimes of violence" under § 924(c)(3)(A)'s "force" clause, and because § 924(c)(3)(B)'s residual clause is unconstitutionally vague, Mr. McLean's convictions on Counts One and Two cannot be used to support his conviction on Count Five and that conviction must be vacated.

A.   <u>Mr. McLean's Hobbs Act convictions cannot be considered crimes of violence under §924(c)(3)(B)'s residual clause because the residual clause is void for vagueness.</u>

After *Johnson v. United States*, 135 S. Ct. 2551 (2015), the "residual" definition of "crime of violence" at § 924(c)(3)(B) is void for vagueness, and therefore may not be relied upon to classify any offense as a predicate for purposes

37

of the mandatory consecutive sentence. *United States v. Cardena*, No. 12-3680, 2016 WL 6819696, at *24-25 (7th Cir. Nov. 18, 2016) (invalidating 924(c)(3)(B) as unconstitutionally vague); *see Baptiste v. Att'y Gen.*, —F.3d—, No. 14-4476, 2016 WL 6595943, at *1 (3d Cir. Nov. 8, 2016) (invalidating identical language at 18 U.S.C. § 16(b)).[6]

Hobbs Act robbery and conspiracy to commit Hobbs Act robbery therefore no longer qualify as crimes of violence unless they meet the alternative statutory definition, *i.e.*, unless they have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). In this context, "physical force means violent force." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original) (internal citations omitted).

B.    <u>The substantive offense of Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A) because it can be violated without the use, attempted use, or threatened use of violent physical force.</u>

The substantive offense of Hobbs Act robbery as defined by 18 U.S.C. § 1951(a) does not categorically require the use of violent force. Rather, a person

---

[6]    Recently, in *United States v. Anthony Robinson*, U.S.C.A. No. 15-1402, slip. op. at 6 (3d Cir. Dec. 19, 2016), this Court was presented with and did not reach the issue of whether the residual clause contained in § 924(c)(3)(B) is void for vagueness.

may commit Hobbs Act robbery by such non-forcible means as placing a person in

fear of future injury or even by threatening to cause the devaluation of an

investment (say, by tearing up a promissory note).  18 U.S.C. § 1951(b) (providing

that Hobbs Act robbery can be committed by means of force *or* "fear of injury,

immediate or future, to [a person's] person or property").  *See*, *e.g., United States

v. Teamsters Local 560*, 780 F.2d 267, 281 (3d Cir. 1986); *see also Chrzanoski v.

Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003) (explaining that physical harm can be

caused by "guile [or] deception" rather than force).  Recently, this Court

acknowledged that certain scenarios, albeit "far-fetched," which did not involve

the use or threat of physical force, such as "throwing pain on someone's house,

pouring chocolate syrup on someone's passport, or spray painting someone's car,"

"*could provide a basis* for conviction under 18 U.S.C. § 1951(a)," *United States v.

Anthony Robinson*, U.S.C.A. No. 15-1402, slip. op. at 13-14 (3d Cir. Dec. 19,

2016) (emphasis added).

The Court in *Robinson* found that the defendant's combined convictions for

a substantive Hobbs Act robbery offense and for *brandishing* a firearm necessarily

required a finding of "actual or threatened force, or violence, or fear of injury"

because a brandishing conviction requires the jury to find that the firearm be

shown to another person in order to intimidate that person.  *Robinson*, slip. op. at

14; 18 U.S.C. § 924(c)(4).  Therefore, the Court concluded that a Hobbs Act

robbery "committed while brandishing a firearm" is a crime of violence.

*Robinson*, slip. op. at 13. *Robinson* is not controlling here because Mr. McLean's

924(c) conviction was not based on brandishing a firearm. Rather, his 924(c)

conviction was based on simply possessing the firearm. Indeed, Mr. McLean

never brandished, pointed, showed, or even mentioned a firearm to any alleged

victim because no victim existed in this case.

Because the substantive offense of Hobbs Act robbery does not have as an

element the use, attempted use, or threatened use of violent physical force, neither

categorically nor as necessarily found by the jury here, Mr. McLean's conviction

in Count Two cannot serve as the predicate offense for his 924(c) conviction.

C. Conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A) because it can be violated without the use, attempted use, or threatened use of violent physical force.

According to the jury instructions in this case, to be convicted of conspiracy

to commit Hobbs Act robbery, the government had to prove (1) that two or more

people entered into an agreement to commit the robbery, (2) that the defendant

joined that agreement, (3) that the defendant knew of the conspiracy's objective

and joined in order to achieve the objective, and (4) that at some point during the

existence of the conspiracy, at least one member of the conspiracy performed an

overt act to further the objective of the conspiracy.  App. 683-84.[7]  None of these

elements required the use, attempted use, or threatened use of physical force.

The mere act of intentionally joining an agreement with a certain objective,

an act which encompasses the first three elements, is a wholly mental act which

requires no physical actions at all and certainly does not require the use, attempted

use, or threatened use of physical force.

Nor does the performance of an overt act, the fourth element, necessarily

require the use, attempted use or threatened use of physical force.  An overt act is

any step taken in furtherance of the conspiracy, regardless of whether it involved

the use of physical force.  For example, here, the government alleged as an overt

act that "defendant Clifton McLean met Person #1 in a pre-arranged meeting

location in the Eastern District of Pennsylvania."  App. 25.  There was no element

of physical force contained in this overt act.  The jury was instructed that the

government need only prove one of the overt acts alleged, that the overt act itself

did not have to be an illegal act, and that Mr. McLean did not even have to be the

one who committed the overt act.  App. 688.  Furthermore, to obtain a conspiracy

conviction, the government did not have to prove that anyone actually committed

---

[7]    While proof of an overt act is not necessarily required to obtain a conviction
for Hobbs Act conspiracy, *United States v. Salahuddin*, 765 F.3d 329, 338 (3d Cir.
2014), Mr. McLean addresses the overt act element here because the jury was so
instructed.

the object offense of the conspiracy.  App. 689; *United States v. Watkins*, 339 F.3d 167, 178 (3d Cir. 2003).  Thus, one could be convicted of conspiracy to commit Hobbs Act robbery simply for entering into an agreement and meeting at a location – indeed, that was all Mr. McLean did in this case.  Such behavior does not require any use of physical force.

Consistent with the analysis here, other courts have found that the inchoate offense of conspiracy to commit a robbery does not require the use, attempted use, or threatened use of physical force.  *See United States v. Gore*, 636 F.3d 728, 731 (5th Cir. 2011) (finding that conspiracy to commit aggravated robbery was not a "violent felony" under ACCA's force clause, but was included in ACCA's residual clause); *United States v. White*, 571 F.3d 365, 369 (4th Cir. 2009) (holding that a conviction under North Carolina law for conspiracy to commit robbery with a dangerous weapon "does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another'"); *United States v. King*, 979 F.3d 801, 802 (10th Cir. 1992) (holding that a conviction under New Mexico law for conspiracy to commit armed robbery was not a violent felony within the meaning of ACCA's force clause).

Because Mr. McLean's conviction for conspiracy to commit Hobbs Act robbery does not require the use, attempted use or threatened use of physical force, it cannot serve as a predicate offense for his 924(c) conviction.

42

    D.    <u>Mr. McLean's 924(c) conviction must be vacated because at least one or more of the possible grounds for conviction is legally invalid.</u>

The jury here was instructed that it could convict Mr. McLean of Count Five on the basis of the Hobbs Act offenses (Counts One and Two) **or** the drug trafficking counts (Counts Three and Four). App. 708 (emphasis added). When "'one of two or more alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory.'" *United States v. Tyler*, 732 F.3d 241, 253 (3d Cir. 2013) (quoting *United States v. Syme*, 276 F.3d 131, 144 (3d Cir. 2002)). As half the theories supporting the 924(c) conviction were legally invalid, that conviction should be vacated and a new trial ordered.

43

## IV.

### Mr. McLean's 922(g)(1) conviction cannot be sustained when there was no evidence that his intrastate possession of a firearm had a substantial effect on interstate commerce.

<u>Standard of Review</u>

On challenges to the sufficiency of the evidence, the Court "view[s] the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McGuire*, 178 F.3d at 206 n.2 (internal quotation marks and citation omitted). The construction of a statute in accordance with the Constitution is a purely legal issue subject to plenary review. *Singletary*, 268 F.3d at 198-99.

<u>Discussion</u>

Mr. McLean's conviction for being a felon in possession of a firearm must be vacated because the evidence failed to establish that his simple intrastate possession of a firearm substantially affected interstate commerce. The conviction must also be vacated because Congress lacked the power to regulate under the Commerce Clause the simple possession of a firearm. It is counsel's understanding that this Circuit's binding precedent forecloses relief on this claim at

this time.  *See Singletary*, 268 F.3d at 205.  Mr. McLean raises it here to preserve

the matter for future review, in the event the governing law changes.

The Supreme Court has made clear that there are only three categories of

activity that Congress may regulate under the Commerce Clause:  (1) the use of the

channels of interstate commerce; (2) the instrumentalities of interstate commerce

or persons or things in interstate commerce; and (3) activities that substantially

affect interstate commerce.  *Lopez*, 514 U.S. 549; *see Alderman v. United States*,

131 S. Ct. 700, 701 (2011) (Thomas, J., joined by Scalia, J., dissenting from denial

of certiorari).

Section 922(g)(1), prohibiting the simple possession of a firearm by a

convicted felon, does not properly relate to either of the first two categories.  *See*

*Jones*, 529 U.S. 848 (2000) (holding that owner-occupied residence was not

actively used in commerce, nor property "in" interstate commerce, despite

premises' present mortgage to out-of-state lender, coverage under policy issued by

out-of-state insurer, and consumption of fuel transported from out of state).

The statute therefore must be evaluated in terms of the third category,

providing for regulation of economic activity that substantially affects interstate

commerce.  The intrastate possession of a firearm is not economic activity

substantially affecting interstate commerce.  *See, e.g., Morrison*, 529 U.S. 598

(holding that federal statute providing civil remedy for victims of gender-

45

motivated violence exceeded Congress's Commerce Clause powers).  Such

possession is therefore beyond the power of Congress to regulate.

Accordingly, Mr. McLean's conviction under § 922(g)(1) must be vacated

both because the trial evidence failed to show that his simple intrastate possession

of a firearm substantially affected interstate commerce and because the very

enactment of § 922(g)(1) exceeded Congress's lawmaking authority and the

district court lacked jurisdiction over Count Six of the indictment.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment should be reversed and the matter

remanded for entry of a judgment of acquittal and/or a new trial.



Respectfully submitted,


*/s/ Susan M. Lin*
Susan M. Lin
PA ID No. 94184
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
(215) 925-4400

*Attorney for Appellant Clifton McLean*


DATE:  12/27/2016

## CERTIFICATE OF BAR MEMBERSHIP

I, Susan M. Lin, hereby certify pursuant to L.A.R. 46.1(e) that I am admitted to practice before the United States Court of Appeals for the Third Circuit.

Date: 12/27/2016                    */s/ Susan M. Lin*
                                    Susan M. Lin


## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

I, Susan M. Lin, hereby certify that:

(1)    The foregoing Brief for Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,012 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

(2)    The foregoing Brief for Appellant complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2004 in a 14-point Times New Roman font.

Date: 12/27/2016                    */s/ Susan M. Lin*
                                    Susan M. Lin

## <u>CERTIFICATE OF SERVICE</u>

I, Susan M. Lin, hereby certify that on December 27, 2016, I filed the

foregoing Brief for Appellant and Appendix (Volumes 1-2) on the Court's

CM/ECF system, and, as such, service was made upon the below counsel for

appellee:

> Jeanine Linehan, Esq.
> Assistant United States Attorney
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA  19106-4476

Date: 12/27/2016                    */s/ Susan M. Lin*
                                    Susan M. Lin

## <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

I, Susan M. Lin, hereby certify that the text appearing in both the electronic

version and hard copy version of the foregoing Brief for Appellant is identical

Date: 12/27/2016                    */s/ Susan M. Lin*
                                    Susan M. Lin

## <u>CERTIFICATE OF VIRUS CHECK</u>

I, Susan M. Lin, hereby certify that a virus check was performed on the .pdf

file of this brief using Norton 360, and that no virus was found.

Date: 12/27/2016                    */s/ Susan M. Lin*
                                    Susan M. Lin